IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 2 0 2018

JULIA C. DUDLEY, CLERK
BY: H. Beeson
DEPUTY CLERK

ROTHY'S, INC. )
)
    Plaintiff, )
)
v. )
)
JKM TECHNOLOGIES, LLC, et al., )
)
    Defendants. )
)

Civil Action No. 3:18-cv-00067

By: Hon. Michael F. Urbanski
Chief United States District Judge

## MEMORANDUM OPINION

Plaintiff Rothy's, Inc. ("Rothy's") manufacturers and markets a ballet flat shoe named The Flat. Defendant JKM Technologies, LLC d/b/a OESH Shoes ("JKM") manufacturers and markets a competing ballet flat shoe named the Dream Flat. Rothy's filed suit, alleging patent infringement and Lanham Act violations against defendants JKM and Dr. Casey Kerrigan (collectively, "Defendants"), based on perceived similarities between The Flat and the Dream Flat.

This matter comes before the court on Defendants' Motion to Dismiss Pursuant to Rule 12(B)(6) (the "Motion"), ECF No. 19. Defendants ask the court to dismiss Kerrigan in toto, and dismiss the Lanham Act claims from Rothy's Complaint (the "Complaint" or "Compl."), ECF No. 1. For the reasons discussed below, the Motion will be **GRANTED** with respect to Kerrigan, and **DENIED** with respect to the Lanham Act claims.

# I. Background

Plaintiff Rothy's Inc. manufacturers a ballet flat shoe named the Flat ("The Flat").[1] The Flat "has a distinctive shape and design such that it is recognized by consumers of footwear." Compl. ¶ 12. The Flat is "designed and seamlessly manufactured from recycled bottles using a proprietary 3D knitting process." Id. ¶ 9. This combination of features constitutes the trade dress of The Flat. To that end, Rothy's alleges that the shape and ornamental design of The Flat is nonfunctional. Id. ¶ 15.

The Flat "quickly gained success in the market, selling more than $40 million dollars of product, and earn[ed] a reputation with consumers for its design, the comfortable fit and lightweight and extremely attractive aesthetic." Id. ¶ 11. The Flat has also received substantial media attention. Id. ¶ 14.

Around March 20, 2018, Defendants, or someone acting on their behalf, purchased a pair of The Flat, where it was shipped to JKM's headquarters. Id. ¶ 19. Defendants began reviewing, researching, and copying The Flat. Id. ¶ 20. Around June 2018, Defendants began marketing a competing flat called the Dream Flat ("The Dream Flat"). The "shape, design and look [of The Dream Flat] . . . is virtually identical to Rothy's The Flat product." Id. ¶ 21. Additionally, the look of The Dream Flat causes confusion among consumers. Id. ¶¶ 22–23. Defendants have profited from sale of The Dream Flat. Id. ¶ 25.

# II. Motion to Dismiss

Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against Kerrigan and all Lanham Act claims against both Defendants.

---

[1] The court "must assume all [well-pled facts] to be true." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009) (quoting Trulock v. Freeh, 275 F.3d 291, 399 (4th Cir. 2001)).

## A.    Legal Standard

Rule 12(b)(6) permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

A court must construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [a complaint's] legal conclusions." Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085 (4th Cir. 1979). Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

In adjudicating a motion to dismiss, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). A court cannot stray from these documents on Rule 12(b)(6). "[I]f it does, it converts the motion into one for summary judgment." Id. Converting a motion to dismiss into a motion for summary judgment "is not

appropriate where the parties have not had an opportunity for reasonable discovery." Id. 448–49.

## B.    Kerrigan

Rothy's pleads all counts in the Complaint against both Kerrigan, in her personal capacity, and JKM. Kerrigan moves to dismiss all claims against her. Kerrigan argues that Rothy's fails to plead any facts sufficient to pierce the corporate veil and establish personal liability against her.

"A corporation exists as a legal entity separate and distinct from its corporate shareholders." Cancun Adventure Tours, Inc. v. Underwater Designer Co., 862 F.2d 1044, 1047 (4th Cir. 1988). Usually, then, "each shareholder's responsibility for the acts of a corporation is limited to the shareholder's investment in that corporation." Id. Under most circumstances, a corporation's shareholders may be held liable for the corporation's debts only through veil piercing. See C.F. Trust, Inc. v. First Flight L.P., 266 Va. 3, 9–10, 580 S.E.2d 806, 809 (2003). "Traditional veil piercing permits a court to render an individual liable in a judgment against a business entity in which the individual has an interest, when the entity 'is in fact a mere instrumentality or alter ego of [the individual].'" Sky Cable, LLC v. DIRECTV, Inc., 886 F.3d 375, 385 (4th Cir. 2018) (alteration in original) (quoting NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 176 (2d Cir. 2008)). But a court's decision to pierce the corporate veil "is an extraordinary act to be taken only when necessary to promote justice." C.F. Trust, 266 Va. at 10, 580 S.E.2d at 809.

Nonetheless, the Fourth Circuit has also held that, in trademark infringement and unfair trade practices cases, "[a] corporate official may be held personally liable for tortious

conduct committed by him, though committed primarily for the benefit of the corporation."
Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. 1987); see also Farm Fresh
Direct Direct By a Cut Above LLC v. Downey, Civ. No. ELH-17-1760, 2017 WL 4865481,
at *5 (D. Md. Oct. 26, 2017) ("Moreover, when an individual defendant who is otherwise
protected by an organization's limited liability shield commits a tort or violates the Lanham
Act, she may be held individually liable.").

Under the Polo Fashions rubric, courts have denied motions to dismiss against
corporate shareholders and officers in Lanham Act cases were the plaintiffs alleged, for
instance, that the individual defendant: (1) was "president and principal stockholder" of the
corporation and "participated" in infringement, Polo Fashions, 816 F.2d at 147, 150;
(2) "unfairly appropriated the success and reputation of [the plaintiff] as well as the
trademark [at issue] and parlayed them into business for [the corporation]," Gorby v.
Weiner, Civ. No. TDC-13-3276, 2014 WL 4825962, at *6–7 (D. Md. Sept. 23, 2014);
(3) "personally participated in the selection of the [offending company] name" and
"authorized and approved . . . counsel [to] file a trademark registration application," Planet
Techs., Inc. v. Planit Tech. Grp., LLC, 735 F. Supp. 2d 397, 405 (D. Md. 2010) (internal
quotations omitted); and (4) "is the resident agent and incorporator" of the corporation,
"filed its articles of organization to create a name confusingly similar to" plaintiff "for the
purpose of selling [products] in competition with plaintiff," and "participated in alleged
violations of the Lanham Act," even though the "allegations as to [the individual defendant]
border on thin," Fresh Farm Direct, 2017 WL 4865481, at *6–7 (internal quotations and
citations omitted). The common thread throughout these cases is that the plaintiff levies

some particularized allegations against the individual defendant—that is, the individual defendant undertook some particular action vis-à-vis the underlying Lanham Act claims.

Defendants assume that Rothy's can only reach Kerrigan through veil piercing. See Mem. Supp. Defs.' Mot. Dismiss Pursuant Rule 12(b)(6) ("MTD Br."), ECF No. 20, at 6–7. Defendants characterize Kerrigan as "a shareholder of" JKM, and argue that the "Complaint fails to assert <u>any</u> recognizable grounds to hold Dr. Kerrigan individually liable under any legal theory alleged in the Complaint." <u>Id.</u> at 7.

Given <u>Polo Holdings</u>, Defendants are incorrect. Rothy's can plead a claim against Kerrigan personally if it makes particularized allegations that Kerrigan engaged in tortious acts meant to benefit JKM.

The problem, however, is that Rothy's does not plead particularized facts regarding Kerrigan's actions. All relevant facts in the Complaint (other than facts relating to Kerrigan and jurisdiction) are pled as to "Defendants." The Complaint does not contain a single specific allegation as to Kerrigan. Rothy's failure to plead specific allegations as to Kerrigan takes the Complaint out of the ambit of <u>Polo Fashions</u>. In other words, Rothy's fails to state a claim against Kerrigan.

That is not to say that Rothy's will be unable to state a viable claim against Kerrigan, however. The court will grant the Motion as to Kerrigan without prejudice. Rothy's is free to replead the allegations against Kerrigan, as long as the amended pleadings are consistent with Federal Rule of Civil Procedure 11.

## C.    Lanham Act Claims

Rothy's claims that Defendants have infringed upon Rothy's trade dress, in violation of the Lanham Act. Rothy's also claims that Defendants have engaged in unfair competition and false designation, also in violation of the Lanham Act. Both Lanham Act claims are predicated upon Section 43(a) of the Lanham Act. See Compl. ¶¶ 52, 57; 15 U.S.C. § 1125(a).

"The trade dress of a product consists of its 'total image and overall appearance,' including its 'size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd., 187 F.3d 363, 368 (4th Cir. 1999) (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 764 n.1. (1992)). "In evaluating a trade dress claim, a court must not focus on individual elements, 'but rather on the overall visual impression that the combination and arrangement of those elements create." Sleep Sci. Partners v. Lieberman, No. 09-04200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010) (quoting Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1259 (9th Cir. 2001)). In other words, "[t]rade dress is the composite tapestry of visual effects." Id.

> In order to prove a claim for trade dress infringement under the Lanham Act, a plaintiff must show that "(1) its trade dress is primarily non-functional; (2) the alleged infringement creates a likelihood of confusion; and, (3) the trade dress either (a) is inherently distinctive, or (b) has acquired a secondary meaning."

Lance Mfg., LLC v. Voortman Cookies Ltd., 617 F. Supp. 2d 424, 432 (W.D.N.C. 2009) (quoting Ashley Furniture, 187 F.3d at 368).

## 1.    Satisfaction of Pleading Requirements

Defendants first argue that Rothy's has not pled sufficient facts to identify the purported trade dress.

The Supreme Court has not specified what facts are sufficient at the pleading stage to identify the alleged trade dress. Nonetheless, "[t]he purpose of trade dress protection is to 'secure the owner of the trade dress the goodwill of his or her business and to protect the ability of consumers to distinguish among competing products.'" <u>Coach, Inc. v. Farmers Mkt. & Auction</u>, 881 F. Supp. 2d 695, 702 (D. Md. 2012) (quoting 74 Am. Jur. 2d <u>Trademarks & Tradenames</u> § 36 (2012)). Additionally, determining whether a plaintiff has established a trade dress "involves an inherently factual review rarely resolved at the motion to dismiss stage." <u>Stat Ltd. v. Beard Head, Inc.</u>, 60 F. Supp. 3d 634, 638 & n.1. (E.D. Va. 2014). A Lanham Act plaintiff's complaint can therefore survive a Rule 12(b)(6) dismissal motion if it pleads facts sufficient to distinguish its trade dress—whatever that might be— from competitor's trade dress.

Accordingly, courts in this Circuit have granted plaintiffs wide latitude in pleading the content of the trade dress at issue. In <u>Coach, Inc. v. Farmers Market & Auction</u>, for instance, the court denied a motion to dismiss a Lanham Act claim where Coach "allege[d] . . . ownership of a variety of unique and distinctive trade dresses consisting of a combination of one or more features, including sizes, shapes, colors, designs, fabrics, hardware, hangtags, stitching patterns and other non-functional elements comprising the overall look and feel incorporated into Coach products." 881 F. Supp. 2d at 702 (internal quotations omitted). The court held that these allegations were "adequate" to survive dismissal. <u>Id.</u>

Similarly, in Stat Ltd. v. Beard Head, Inc., the court allowed trade dress claims to proceed past the pleadings stage where the plaintiff "include[d] a side-by-side comparison of the respective products' packaging" and alleged the packaging is "innovative, unique, non-functional, and inherently distinctive." 60 F. Supp. 3d at 637 (internal quotations omitted). This was because "the Court [was] constrained to an examination of the sufficiency of the complaint," and "[t]o require the Plaintiff to detail every contour of their trade dress claims run[s] afoul of Rule 8's pleading standard."[2] Id. at 638.

Rothy's pleads the following facts regarding trade dress. "Rothy's The Flat product has a distinctive shape and design such that it is recognized by consumers of footwear." Compl. ¶ 12. "The signature round toe with a distinctive pointed vamp, seamless 3D knitted upper, slim profile and sleek outsole of The Flat constitutes the trade dress of Rothy's The Flat." Id. ¶ 13. Additionally, Rothy's provides several side-by-side graphical comparisons of The Flat versus the Dream Flat. See id. ¶¶ 23–24.

Defendants rely on a series of cases from courts in other circuits—mainly the Second Circuit—that, Defendants claim, dismiss trade dress claims predicated on similar allegations to those made by Rothy's.[3] Most germane are two cases involving Eliya, a shoe manufacturer. In Eliya, Inc. v. Kohl's Corp. (Kohl's), CV 15-2123(JFB)(GRB), 2016 WL 929266 (E.D.N.Y. Feb. 22, 2016), R&R adopted by 15-CV-2123 (JFB)(GRB), 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016), Eliya claimed trade dress protection for seven different shoe styles. Id. at *5. With respect to five shoes, the court found the allegations insufficient

---

[2] Notably, Stat Ltd. is post-Iqbal and Twombly.
[3] In support of Defendants' argument that Rothy's has not properly pled trade dress, Defendants also contend that Rothy's "trade dress claim . . . articulates nothing as a trade dress other than features of a typical ballet flat shoe." MTD Br. 11. As discussed below, that claim is not evident from the face of the Complaint and, therefore, is not an appropriate basis to grant the Motion.

as to the trade dress for five styles because "the complaint offers only photographs and an undefined claim to the 'overall look' of these shoes." Id. With respect to the other two styles, Eliya alleged that the two styles "consists of a woven pattern on the upper portion of the shoe, including the mary jane strap [and] an appendage on the heel end that extends higher than the weave portion." Id. (alteration in original). The court found these allegations insufficient, holding that "[n]othing in the complaint suggests exactly how these features are distinctive."[4] Id.

In Eliya, Inc. v. Steven Madden, Ltd. (Steve Madden I), No. 15-CV-1272 (DRH)(SIL), 2018 WL 1796228 (E.D.N.Y. Jan. 11, 2018), R&R adopted by No. 15-CV-1272 (DRH)(SIL), 2018 WL 1027157 (E.D.N.Y. Feb. 22, 2018), aff'd No. 18-831, 2018 WL 5276275, --- F. App'x ---- (2d Cir. Oct. 23, 2018), Eliya provided a more fulsome description of what it claimed was its protectable trade dress:

> The aggregate of all the following features comprise Eliya's trade dress in the shoe known as the "Lulia Shoe":
>
> (i) Approximately ¼ inch multi-color or multi-shaded wide straps that form a woven distinctive alternating pattern on the upper portion of the shoe[;]
>
> (ii) A closed toe with an angular shape on the top front portion of the shoe[;]
>
> (iii) A mary jane strap;
>
> (iv) An appendage on the heel end that extends higher than the weave portion and includes cutouts though [sic] which the weave can be seen;
>
> (v) Horizontal grooves on the sole portion; and

---

[4] The court justifies this holding in part on "[a]n internet search for 'woven shoe' [that] reveals a seemingly endless variety of shoes from a bevy of manufacturers that fit this description—including the 'mary jane' strap and the raised heel appendage." Kohl's, 2016 WL 929266, at *5. To do so, the court appears to take judicial notice of facts it finds on the internet on a Rule 12(b)(6) motion. The one case Kohl's cites for that proposition is a preliminary injunction case, where a factual record has been developed. By contrast, no such factual record has been developed here.

(vi) The sole portion having weaved notches extending up from the bottom of the sole.

Id. at *6 (alterations in original). Notwithstanding the more detailed description, the court found that the description "lacks the requisite degree of specificity, and is thus legally insufficient" to support a claim for trade dress infringement. Id.

As the Second Circuit explained when affirming Steve Madden I, courts in the Second Circuit must follow Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373 (2d Cir. 1997), which held:

> [F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress. Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea.

Eliya, Inc. v. Steve Madden, Ltd., No. 18-831, 2018 WL 5276275, --- F. App'x ----, at *2–3 (2d Cir. Oct. 23, 2018) (quoting Landscape Forms, 113 F.3d at 381). If Landscape Forms were the law of the Fourth Circuit, then Defendants' argument might be persuasive. To be sure, Rothy's does not describe why the various elements it claims constitute trade dress are distinctive.

At the threshold, however, Landscape Forms "is not a ruling (or an appeal from a ruling) on a Rule 12(b)(6) motion to dismiss; it is, instead, an appeal from the grant of a preliminary injunction following a hearing in the district court." Alpha Kappa Alpha Sorority Inc. v. Converse Inc., 175 F. App'x 672, 679 (5th Cir. 2006) (citing Landscape Forms, 113

F.3d at 375). By contrast, the Fifth Circuit has suggested that, "judging the complaint alone, it is adequate to describe the marks or dress for which protection is claimed, as well as commercial usage of the marks or dress." Id. Importantly, in reaching this conclusion, the Fifth Circuit noted that its opinion did not "conflict[] with the Second Circuit's holding in Landscape Forms." Id. at 680.

Moreover, Landscape Forms is not the law of this Circuit.[5] It appears that no court in this Circuit has cited Landscape Forms for the proposition relied upon by the Eliya line of cases. Even if Landscape Forms were the law of this Circuit, the court would find that Rothy's allegations are sufficient to plead a protectable trade dress. As the Second Circuit explained post-Landscape Forms: "[T]he party seeking protection must . . . be able to point to the elements and features that distinguish its trade dress." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 117 (2d Cir. 2001).

Rothy's has done that here. Rothy's alleges that the "signature round toe with a distinctive pointed vamp, seamless 3D knitted upper, slim profile and sleek outsole of The Flat constitutes the trade dress of Rothy's The Flat," Compl. ¶ 13, which allegations "point to the elements and features that distinguish its trade dress," Yurman, 262 F.33d at 117. To this end, Rothy's allegations regarding trade dress strongly resemble the allegations in Stat Ltd. and Coach, Inc.—allegations that were found to be sufficient to withstand a Rule 12(b)(6) motion. Accordingly, the court concludes that Rothy's has properly plead the existence of a protectable trade dress.

---

[5] Indeed, with respect to "inherent distinctiveness in product configuration cases," the Fourth Circuit has expressly rejected Landscape Forms as "at odds with the analysis set out in [the Supreme Court's decision in] Two Pesos." Ashley Furniture, 187 F.3d at 371.

## 2.     Functionality

Defendants next argue that Rothy's allegations do not sufficiently establish that The Flat's trade dress is nonfunctional. Trade dress must be "primarily non-functional." <u>Ashley Furniture</u>, 187 F.3d at 368. When a trade dress is an unregistered trademark, the plaintiff "has the burden of proving that the matter sought to be protected is not functional."[6] 15 U.S.C. § 1125(a)(3); <u>see also</u> <u>Wal-Mart Stores, Inc. v. Samara Bros., Inc.</u>, 529 U.S. 205, 214 (2000). "Functionality . . . is a question of fact that, like other factual questions, is generally put to a jury." <u>McAirlaids, Inc. v. Kimberly-Clark Corp.</u>, 756 F.3d 307, 310 (4th Cir. 2014).

"[T]he critical functionality inquiry is not whether each individual component of the trade dress is functional, but rather whether the trade dress <u>as a whole</u> is functional." <u>Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.</u>, 87 F.3d 654, 658 (4th Cir. 1996); <u>see also</u> <u>Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.</u>, 730 F.3d 494, 521 (6th Cir. 2013) ("The appropriate focus is the overall trade dress rather than each dissected component." (following <u>Tools USA</u>)). Nonetheless, a plaintiff cannot repackage multiple functional aspects into a purported trade dress and claim that the overall trade dress is not functional. <u>See</u> <u>Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.</u>, 199 F.3d 1009, 1013 (9th Cir. 1999) ("Leatherman is correct that trade dress must be viewed as a whole, but where the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, it is semantic trickery to say that there is still some sort of separate 'overall appearance' which is

---

[6] Defendants contend, and Rothy's does not contest, that the alleged trade dress of The Flat is unregistered. <u>See</u> MTD Br. 11; Pl.'s Resp. Defs.' Mot. Dismiss Pursuant Rule 12(B)(6), ECF No. 25, at 11 (citing <u>LeSportsac, Inc. v. K Mart Corp.</u>, 754 F.2d 71, 75 (2d Cir. 1985), <u>disagreed with on other grounds by</u> <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763. (1992,) for the proposition that trade dress of a product can constitute an unregistered trademark).

not-functional."); CTB, Inc. v. Hog Slat, Inc., NO. 7:14-CV-157-FL, 2018 WL 4035945, at *12 (E.D.N.C. Aug. 22, 2018) ("[H]ere, the trade dress as a whole is functional in that the silhouette claimed in plaintiff's '988 Registration is an arrangement of functional parts, the arrangement of which was dictated solely by functional concerns.")

"A product feature is functional—and therefore not protectable as a trademark or trade dress—'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" McAirlaids, 756 F.3d at 310 (quoting Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 165 (1995)). "In other words, a feature is functional if 'the reason the device works,' or its exclusive use 'would put competitors at a significant non-reputation-related disadvantage.'" Id. at 310–11 (quoting TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 32, 34 (2001)).

Defendants levy three complaints against Rothy's nonfunctionality allegations. First, Defendants argue that Rothy's only allegation about functionality is "a single legal conclusion." MTD Br. 13. To be sure, Rothy's functionality allegations are sparse: "The shape and/or ornamental design of Rothy's The Flat product is nonfunctional." Compl. ¶ 15; see also id. ¶ 51 ("The shape and/or ornamental design of The Flat product as described above is nonfunctional . . . ."). But other courts in this Circuit have found that similar allegations are sufficient at the pleadings stage to deny dismissal. For instance, in Stat Ltd., the plaintiff merely claimed that the trade dress was "non-functional." 60 F. Supp. 3d at 637–38. Because functionality "involves an inherently factual review," requiring a plaintiff "to detail every contour of their trade dress claims run[s] afoul of Rule 8's pleading

standard." Id. at 638. Rothy's allegations regarding functionality are sufficient survive a Rule 12(b)(6) motion to dismiss.

Second, Defendants contend that "[t]he functional purpose or practical benefit of a ballet flat is to give the wearer a slim fit shoe for ample flexibility." MTD Br. 13. Defendants complain that Rothy's "description of 'The Flat's' trade dress seemingly ignores that every ballet shoe shares these exact same qualities." Id.; see also id. at 9 (contending that The Flat is "a plain, generic ballet flat marketed under the unremarkable name, 'The Flat'"); id. at 11 (arguing that alleged trade dress "articulates nothing as a trade dress other than features of a typical ballet flat shoe"); id. at 17 (claiming that Rothy's "alleged trade dress is essentially the 'common basic shape or design' of a ballet flat"); id. (contending that "there can be no likelihood of confusion between [The Flat and the Dream Flat] from a trade dress perspective because both shoes are common ballet flats, just like hundreds of other ballet flats on the market"); id. at 20 (arguing that The Flat "happens to be a ballet flat shoe that is and has been so common in the industry as to be practically omnipresent on women's feet").[7] Again appealing to Landscape Forms, Defendants argue that "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves." Id. (quoting Landscape Forms, 113 F.3d at 380).

In essence, Defendants ask us to delve into what is a ballet flat shoe on a motion to dismiss. While Defendants may ultimately be successful on this argument on summary judgment, the court is examining the sufficiency of the complaint and the incorporated documents. See E.I. du Pont de Nemours, 637 F.3d at 448 (noting that, on a 12(b)(6)

---

[7] Interestingly, although Defendants claim that The Flat and the Dream Flat are both "common ballet flats, just like hundreds of other ballet flats on the market," MTD Br. 17, Defendants also claim that the Dream Flat's "overall appearance is noticeably different from Rothy's The Flat," id. (quotations omitted).

motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint," but "the district court cannot go beyond these documents").

The court declines to accept Defendant's suggestion and inject extraneous materials into a Rule 12(b)(6) motion. Upon review of the complaint and attached documents, the court has no way to discern whether The Flat is "just like hundreds of other ballet flats on the market," MTD Br. 20, or that the Flat "happens to be a ballet flat shoe that is and has been so common in the industry as to be practically omnipresent on women's feet," id. at 20. While it may ultimately be true that Rothy's description of The Flat's trade dress describes most every ballet flat shoe, that purported fact is not apparent from the face of the Complaint or the attached articles. Accordingly, Defendants' second argument fails.

Third, Defendants argue that "the articles cited by [Rothy's] in its Complaint are fatal to the trade dress claim because they demonstrate that 'The Flat' is functional in nature." Id. at 14. To be sure, one of the articles discusses the functionality of The Flat. See Connie Chen, Women in New York City and San Francisco Are Obsessed with These Comfortable Flats Made from Recycled Water Bottles—Here's What They Feel Like, Business Insider (November 1, 2018) ("Because of how they're made, Rothy's shoes have a distinctive feel and functional advantages that other flats don't.") available at https://amp.businessinsider.com/rothys-comfortable-work-flat-review-2018-6. Another article described The Flat as "breathable" and "comfortable." Tariro Mzezewa, What If Your Environmentally Correct Shoes Were Also Cute?, N.Y. Times (June 6, 2017), available at https://www.nytimes.com/2017/06/06/fashion/rothys-recycled-plastic-bottle-shoes.html.

Rothy's defines the trade dress as "[t]he signature round toe with a distinctive pointed vamp, seamless 3D knitted upper, slim profile and sleek outsole." Compl. ¶ 13. In its Opposition, Rothy's suggests that the trade dress of The Flat is the shoe as a whole. See MTD Opp. 11 ("In this case, the correct trade dress inquiry requires an analysis of the overall commercial impression of the design of The Flat as a whole."). The Business Insider article does mention a functional advantage of a seamless 3D knitted upper, but the alleged trade dress is more than just the 3D knitted upper. The other aspects of the trade dress are not discussed vis-à-vis functionality. In other words, while these articles provide insight into the functionality calculus, they are not, in and of themselves, determinative of this issue of fact.

Fourth, Defendants argue that Rothy's own allegations show that the trade dress is functional. Defendants take issue with allegations in the Complaint that The Flat was designed "as being sustainable, having a comfortable fit, and being lightweight." MTD Br. 15 (internal quotations omitted) (citing Compl. ¶¶ 9, 11). To be sure, Paragraphs 9 and 11 of the Complaint do appear to attribute some functionality to The Flat. But it is not clear from the allegations if the functional aspects described in Paragraph 9 and 11 are part and parcel of the shoe itself, or certain elements of the shoe. If it is the former, then the trade dress would likely be functional. But if only certain elements of the shoe are functional, this does not preclude a jury from finding that, taken as a whole, The Flat is nonfunctional. See Tools USA & Equip., 87 F.3d at 659 ("Looking, as we must, at the overall trade dress rather than at individual features, we cannot say that a reasonable jury could only have concluded that

the trade dress was functional."). Because the court cannot resolve that question on a Rule 12(b)(6) motion, the court must reject Defendants' argument.

### 3. Likelihood of Confusion

The alleged infringement must create a likelihood of confusion. To determine if there is a likelihood of confusion, courts generally consider the following factors:

(a) the strength or distinctiveness of the mark;

(b) the similarity of the two marks;

(c) the similarity of the goods/services the marks identify;

(d) the similarity of the facilities the two parties use in their businesses;

(e) the similarity of the advertising used by the two parties;

(f) the defendant's intent; [and]

(g) actual confusion.

Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984).

Rothy's pleads the following allegations regarding confusion:

On information and belief, the similarity between the two products is so striking that consumers seeing The Dream Flat product have been and will continue to be confused into thinking that The Dream Flat product was related to the Rothy's The Flat product. As such, ordinary consumers are likely to be confused as to the source, sponsorship, affiliation or approval relating to The Dream Flat product vis-à-vis Rothy's and it's [sic] The Flat product.

Compl. ¶ 22. Additionally, Rothy's pleads: "Defendants' The Dream Flat product has an overall appearance that is confusingly similar and substantially the same as the trade dress of Rothy's The Flat product, as demonstrated by the side-by-side comparison below:

| Rothy's The Flat | The Dream Flat |
|---|---|



Id. 24. Finally, Rothy's pleads:

> The shape, design and look of Defendants' The Dream Flat product is confusingly similar to Rothy's The Flat product, and incorporates the distinctive features of The Flat product.

Id. ¶ 53.

As Stat Ltd. explained, "the likelihood of confusion is a factual issue dependent on the circumstances of each case and is ill-suited for resolution on a motion to dismiss." Stat Ltd., 60 F. Supp. 3d at 638 n.1 (quoting Petro Stopping Ctrs., L.P. v. James River Petrol., Inc., 130 F.3d 88, 92 (4th Cir. 1997)). In their argument regarding confusion, Defendants fail to cite any case that describes what a plaintiff needs to plead on confusion to survive a motion to dismiss.

Accordingly, in this circuit, cases hold that a plaintiff need not plead with specificity how the infringing trademark causes confusion. For instance, in Stat Ltd., the plaintiff pled that the infringing use "caus[ed] substantial consumer confusion and dilution of Plaintiff's

intellectual property" and "caused confusion amongst customers and retailers as to the origin of [Plaintiff's] products." Id. at 637–38 (alterations in original). The court found that these were allegations were sufficient to survive a motion to dismiss. Similarly, in Coach, the court found the plaintiff's allegations sufficient when the plaintiff plead that the defendants "were using in commerce the plaintiff's mark in a manner likely to confuse consumers about the source or sponsorship of the goods or services." Coach, 881 F. Supp. 2d at 705 (internal quotations omitted).

Even in one of the first Eliya cases, Eliya, Inc. v. Kohl's Dep't Stores, 2006 WL 2645196 (E.D.N.Y. Sept. 13, 2006), the court found that "an application of the so-called Polaroid factors [that is, the factors set forth by the Second Circuit to determine if there is a likelihood of confusion] on this motion to dismiss would be inappropriate because it would involve premature factfinding." Id. at *4 n.2.

Defendants disagree. But their argument is familiar: "As already explained herein, Plaintiff's alleged trade dress is essentially the 'common basic shape or design' of a ballet flat." MTD Br. 17 (citing Ale House Mgmt. v. Raleigh Ale House, 205 F.3d 137, 142 (4th Cir. 2000)). As described above, adjudicating this argument is beyond the scope of a Rule 12(b)(6) motion. Instead, Rothy's confusion allegations are sufficient to pass muster under Iqbal and Twombly.

### 4. Secondary Meaning

Finally, a trade dress must either be inherently distinctive or have acquired a secondary meaning. Because the Rothy's trade dress is not registered, the Supreme Court has held that trade dress "is distinctive, and therefore protectable, only upon a showing of

secondary meaning." Wal-Mart Stores, 529 U.S. at 216. Secondary meaning "occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" Id. at 211 (alteration in original) (quoting Inwood Labs., Inc. v. Ives Labs, Inc., 456 U.S. 844, 851 n.11 (1982)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 125 (4th Cir. 1990) ("Secondary meaning is the consuming public's understanding that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify.").

The Fourth Circuit has adopted the Second Circuit's list of

> factors . . . relevant to, though not dispositive of, the "secondary meaning" inquiry: (1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use.

Perini, 915 F.2d at 125. Additionally, "[p]roof of secondary meaning entails vigorous evidentiary requirements." Id. (quoting Thompson Med. Co. v. Pfizer Inc., 753 F.2d 208 (2d Cir. 1985)). Because of this, "secondary meaning [is] factual in nature and typically ill-suited for a motion to dismiss." Stat Ltd., 60 F. Supp. 3d at 639.

Rothy's secondary-meaning allegations are, again, brief: "The shape and/or ornamental design of The Flat product as described above is nonfunctional and has achieved secondary meaning in that it has come to be associated with Rothy's in the minds of consumers." Compl. ¶ 51. Nonetheless, Rothy's does plead certain factors described in Perini. For instance, Rothy's pleads that "The Flat quickly gained success in the market, selling more than $40 million dollars of product." Id. ¶ 11. Rothy's notes the "significant

media attention from a variety of national and global media sources" that The Flat has received. Id. ¶ 14. And Rothy's Complaint is based on Defendants' purportedly plagiarizing Rothy's trade mark.

Defendants raise two issues regarding secondary meaning. First, they argue that "[t]he shoe was launched less than three years ago[,] which is far too short an amount of time to acquire any secondary meaning." MTD Br. 20. While it is true that length of time is one factor a court should consider when determining secondary meaning, it is neither exclusive nor dispositive. See Perini, 915 F.2d at 125. Rothy's has pled facts sufficient to satisfy some of the elements. Given the factually intensive nature of secondary meaning, it is not appropriate for the court to weigh the factors at this stage. Defendants may raise this argument on summary judgment, if they wish.

Second, Defendants complain that "the generic design in question of a rounded toe and pointed vamp is but one of only a few available options to manufactures of ballet flats; in short, the toe and vamp can only be rounded or angled/pointed." MTD Br. 20. There are two problems with this argument. First, this argument rehashes one of Defendants' main points: The Flat is a generic ballet flat. For the reasons described above, this argument fails at the pleading stage. Second, the shape of the toe is but one element in Rothy's alleged trade dress. The court is required to examine Rothy's trade dress holistically, rather than piecemeal. Accordingly, Defendants' secondary meaning arguments fail, and Rothy's has properly pled that The Flat's trade dress has acquired secondary meaning.

### III.   Conclusion

For the reasons stated above, Defendants' Motion will be **GRANTED** with respect to claims against Kerrigan, and **DENIED** with respect to claims arising under the Lanham Act. The court **GRANTS** Rothy's request to amend its Complaint to replead claims against Kerrigan.

Entered: 12/20/2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge